## State v. Nolan
*[Cite as 8 AOA 465]*

*Case No. 89CA004732*
*Lorain County, (9th)*
*Decided December 12, 1990*

*Michael E. Szekely, Elyria Prosecutor, 328 Broad St., Elyria, Ohio 44035, for Plaintiff.*

*Kenneth M. Lieux, 252 Second St., Elyria, Ohio 44035, for Defendant.*

HAYES, J.

On September 15, 1989, defendant-appellant, Leo Nolan, was charged with driving under the influence (R.C 4511.19(a)(1)) and failure to drive within marked lanes (R.C. 4511.12). Nolan entered a plea of not guilty.

On September 21, 1989, Nolan filed a motion to suppress the results of a B.A.C. Verifier test taken after his arrest. This motion was based on the alleged failure of the Highway Patrol to follow radio frequency interference testing procedures. The trial court overruled Nolan's motion, Nolan entered a plea of no contest, and was found guilty.

### Assignments of Error

"I. The trial court erred in overruling appellants motion to suppress B.A.C. Verifier test results when the state failed to comply with the Ohio Department of Health Regulations concerning radio frequency interference surveys.

"II. The trial court erred in holding that Ohio Department of Health Regulations do not mandate that a new RFI survey be conducted for B.A.C. Verifier machines in use after January 1, 1987."

"III. The trial court erred in its findings of fact and conclusions of law in holding that the B.A.C. Verifier's spatial placement or axis had not been changed, when testimony revealed the machine had been removed on numerous occasions and taken to Massillon, Ohio for repairs."

As these assignments of error are interrelated, they will be addressed together.

R.C. 3701.143 grants to the Ohio Department of Health the authority to establish the techniques to be utilized in determining the amount of alcohol in a person's blood. *Columbus v. Soltesz* (Sept. 21, 1988), Franklin Cty. App. Nos. 89AP-83 and 89AP-84, unreported. Pursuant to the authority given under R.C. 3701.143, the Ohio Department of Health adopted the regulations set forth in OAC 3701-53-02, which specify proper techniques for measuring a person's blood alcohol content as well as for testing approved devices to ensure that they function properly. *Id.* Of particular importance to the issues at bar is OAC 3701-53-02(C), which provides:

"(C) A radio frequency interference (RFI) survey shall be performed for each breath testing instrument listed in paragraphs (A)(1) to (A) (3) and (A) (5) of this rule that is in operation at each breath testing site. RFI surveys are not required for the instrument listed in paragraph (A) (4) of this rule. Survey results shall be recorded on the form set forth in appendix G to this rule. The original RFI survey form and any subsequent RFI survey forms shall be kept on file in the area where tests are performed. *A new survey shall be conducted when a breath testing instrument's spatial placement or axis is changed from that designated in the most recent survey form.* Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check." (Emphasis added)

The primary issue raised by Nolan is whether the spatial placement or axis of the BAC Verifier in question was changed so as

to mandate a new RFI test prior to the test on Nolan.

On a pretrial motion to suppress the results of a blood alcohol test, such as the one at bar, the state has the ultimate burden of proof or persuasion as to the facts necessary to show that the test was done in accordance with established law insofar as the defendant takes issue with the test. *State v. Gasser* (1980), 5 Ohio App. 3d 217, 219; *State v. Fley* (December 14, 1988), Hamilton App. No. C-870811, unreported. If the State fails to demonstrate that it complied with the requisite procedures for the administration of such a test, the test results are inadmissible. *Cincinnati v. Sand* (1975), 43 Ohio St. 2d 79. Strict compliance with 3701-53-02, however, is not a prerequisite to admissibility as such compliance is not always humanly or realistically possible. *State v. Plummer* (1986), 22 Ohio St. 3d 292, 294. In the absence of strict compliance, substantial compliance with 3701-53-02 will suffice to render test results admissible. *Id.*, *State v. Kocher* (April 18, 1989), Franklin County App. No. 88AP-1042, unreported.

In the case at bar, the State called State Patrol Technician Virgil DeHoff in an effort to establish compliance with the requirements of OAC 3701-53-02. DeHoff indicated that the last RFI test done on the BAC Verifier in question was performed in April of 1984, before the formulation of the current RFI testing procedures which took effect January 1, 1987. The failure to test the machine after the implementation of the new guidelines, however, is not dispositive, as this court has held that the language of 3701-53-02 does not mandate that an RFI survey in conformance with the new guidelines be performed after January 1, 1987. *City of Medina v. Townsend* (October 31, 1990), Medina App. No. 1879, unreported. Accordingly, the second assignment of error is without merit.

DeHoff's testimony also indicates that numerous repairs have been conducted on the BAC Verifier since the RFI test in 1984 and that some of these repairs may have entailed taking the BAC Verifier to Massillon. DeHoff also stated that the machine must be moved to replace internal parts. Particularly troubling are DeHoff's admissions that the machine was placed back in the "same spot, plus or minus a foot", and that the axis changes when the machine is moved. OAC 3701-53-02

requires that a new RFI test be conducted whenever the "instrument's spatial placement or axis is chafed ***." In light of the express language of OAC 3701-53-02, and the testimony of DeHoff, this court cannot conclude that the State established substantial compliance with OAC 3701-53-02.

The first and third assignments of error are well taken.

Accordingly, the case at bar is reversed and remanded for proceedings in conformity with this opinion.

CIRIGLIANO, J., concurs.

BAIRD, P.J., dissents.

Hayes, J., Judge of the Domestic Relations Court of Portage County, sitting by assignment pursuant to Article IV, Section 5(A) (3), Constitution.