THE STATE OF OHIO, APPELLEE, *v.* RISNER, APPELLANT.

[Cite as State v. Risner (1977), 55 Ohio App. 2d 77.]

(No. 8-77-12—Decided December 15, 1977.)

*Mr. John L. Ross,* prosecuting attorney, for appellee.
*Messrs. Lile & Heaton* and *Mr. Gerald L. Heaton,* for appellant.

GUERNSEY, J. Defendant was charged, tried and convicted in the Bellefontaine Municipal Court for the crime of operating a motor vehicle while under the influence of alcohol proscribed by R. C. 4511.19.

Upon trial to the court without a jury it appeared from the testimony of the arresting officer that he first saw the defendant at the scene of a collision beside a car which he is alleged to have been driving; that the officer had not seen him driving the car; that defendant was being attended to by a rescue squad attendant; that the officer did not personally talk to him or any of the witnesses at the scene; that the car which defendant is alleged to have driven was not titled in defendant's name and had been driven left of center and hit another car on its side of the road; that defendant had "blood on his forehead and large knot where he apparently struck the windshield"; that he "was being treated, I came up and tried to see if I could assist and there was an odor of alcohol and the attendants were asking him if he was hurt," which he denied; that the witnesses stated there was no one else in the car and that a few minutes earlier he had been involved in another accident with a person who followed him and stated "she only saw one person in the car"; that he was removed

to a hospital where he denied to the officer that he had been the driver of the car and also denied being in the car; and that he placed him under arrest at the hospital "as a result of my own investigation" though he had not talked to anyone at the scene; that he had talked to other officers involved in the investigation and received from them the statements taken at the scene of the collision. There was no testimony by the arresting officer as to what the other officers told him and the statements taken by them from persons at the scene are not in evidence. After the arrest a sample of defendant's blood was removed from him by a doctor at the hospital and thereafter analyzed for alcohol content by a chemist of the Ohio State Highway Patrol.

Defense counsel objected to the admission into evidence of the results of this analysis because there was no testimony that the blood sample had been withdrawn by a "qualified" physician. The trial was recessed for a period of time (till April 18, 1977) to obtain such testimony. By the time that the trial was reconvened defense counsel had either made or filed a motion on the basis of *Oregon* v. *Szakovits* (1972), 32 Ohio St. 2d 271, to suppress the results of the blood test because the officer making the arrest had not observed the defendant operating a motor vehicle. At the close of the state's evidence the court entertained argument on the motion and took the motion under advisement. On May 3, 1977, on the court being reconvened the court permitted additional argument on the motion, as well as argument as to the timeliness of same, defense counsel claiming that the defendant was unaware that the arresting officer had not witnessed his operation of a car until such fact came out on the first day of trial and the prosecution claiming that that fact could have been obtained by discovery procedures, defendant then claiming that the shortness of the time between the plea and trial did not permit the discovery process followed by a pre-trial motion to suppress. The court thereupon overruled the motion "on the grounds of Rule 12," and the results of the blood test (.26) were admitted into evidence, the defense moved for a "directed verdict" which motion was overruled, the defense rested without intro-

ducing any evidence, and the court found the defendant guilty of the offense of operating a motor vehicle while under the influence of alcohol as well as guilty of the additional offense charged of driving while under license suspension.

So far as our record is concerned only the conviction of the offense of operating while under the influence of alcohol has been journalized and the appeal is solely from that conviction, the defendant assigning error of the municipal court (1) in denying his motion to suppress the results of the blood test, (2) in failing to hear his motion to suppress prior to the close of the state's case, (3) in denying his motion for "involuntary dismissal" at the close of the state's case, (4) in granting the state's motion for continuance in order to obtain testimony of the physician, thereby resulting in hardship of defendant, and (5) in that the "finding" of the court was against the manifest weight of the evidence.

The defendant has not argued his second, fourth and fifth assignments of error and, invoking our prerogative under Appellate Rule 12, we will not further consider same. He has argued the other two assignments of error together, generally as to the illegality of the arrest and the inadmissibility of the results of the blood test as the fruit of a poisoned tree, as to the timeliness of his motion to suppress, and as to the want of evidence of intoxication.

Under Criminal Rule 12 it is incumbent upon a defendant to file his motion to suppress *illegally obtained* evidence "within thirty-five days after arraignment or seven days before trial, whichever is earlier," or within an extension of such time made by the court in the interest of justice. The failure to timely file such motion shall constitute a waiver of the objection unless the court for good cause grants relief from the waiver.

It must be emphasized, however, that this rule applies to illegally obtained evidence which would be otherwise competent and have probative value as to the commission of an offense. The same was true under the common law rule of law set forth in *State* v. *Davis* (1964), 1 Ohio St. 2d 28, and subsequent cases.

Here the evidence sought to be suppressed was the result of a blood test which if properly taken as prescribed by the implied consent law, R. C. 4511.19 and 4511.191, raises, at the appropriate concentration of blood alcohol, a presumption that the defendant was under the influence of alcohol when operating a motor vehicle.

R. C. 4511.191 prescribes, among other things:

"(A) Any person who operates a motor vehicle upon the public highways in this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, or urine for the purpose of determining the alcohol content of his blood if arrested for the offense of driving while under the influence of alcohol. The test or tests shall be administered at the direction of a police officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways in this state while under the influence of alcohol. * * * "

Thus under the provisions of this controlling statute, there can be no implied consent to withdraw blood and no presumption arising from the result of an analysis thereof unless the person from whom the blood is taken was arrested for the offense of driving while under the influence of alcohol. In the circumstances of this case, where actual consent was given, the actual consent was given after reading the implied consent form to the defendant advising him of the consequences of his refusal to a chemical test, and such consent cannot be said to be a voluntary consent sufficient to eliminate the requrement of arrest as a condition precedent to the giving of the chemical test and the raising of the presumption dependent on the result of that test.

Accordingly, the presumption cannot arise if there has been no arrest and there has been no arrest unless same is made in the manner provided by law. The arrest gives rise to the implied consent, which gives rise to the test, which gives rise to the presumption. The presumption cannot exist or have any probative value independently of a valid arrest. Thus, it is unlike the situation normally dealt with in motions to suppress, where the evidence sought to be suppressed had probative value independently of the illegality of the manner in which it has

been obtained. There the waiver goes to the illegality of the obtention. Here an element indispensable to the presumption cannot be waived and it is not necessary, in such circumstances, to raise the issue by a pre-trial motion to suppress.

In *Oregon* v. *Szakovits* (1972), 32 Ohio St. 2d 271, 274, in affirming judgments of conviction, and the arrests on which such judgments were based the Supreme Court said:

''After viewing the scene of the accident, and hearing appellants' admissions on a first-hand basis, the officers could reasonably conclude that each had been operating his vehicle shortly before the officers arrived. Coupled with the fact that appellants were obviously under the influence, the officers properly found each to have violated an ordinance of the respective municipal corporations prohibiting driving while under the influence of alcohol.''

In *State* v. *Adkins,* unpublished, Court of Appeals for Hancock County, No. 5-77-7, decided by this court on July 19, 1977, Judge Cole of this Court, in applying the *Szakovits* case said:

''The test therefore is not specifically the presence of an admission but rather the reasonable conclusion of the officer, based in those cases on an admission, that the driver had shortly before been operating the vehicle. An admission is only one of several possible bases for such a reasonable inference. * * *

''* * * It must be noted that when asked, the appellant denied he was driving. This fact however must be taken in conjuction with the others noted above, and hence does not change the situation. It is not necessary the officer determine the facts beyond a reasonable doubt.''

An examination of the testimony of the arresting officer here discloses sufficient evidence upon which to base a reasonable belief by the officer that the defendant was driving the vehicle near which the officer found him lying upon his arrival at the scene of the collision. His testimony also discloses that the driver of that vehicle had driven across the center line of the road onto the opposing lane of travel and that he had information from some source that a person had seen the defendant involved in another accident a few minutes earlier. There was no testimony

by the arresting officer that he knew how the defendant was involved in the other accident, whether at fault or not, whether he left that scene without stopping, or as to what influenced him to drive upon the wrong side of the road. The officer testifies as to the odor of alcohol when the defendant was being treated at the scene but there is no testimony as to the source of that odor. Although he talked to the defendant at the hospital there is no testimony by the officer as to any odor of alcohol from the defendant at that time, as to any blurred speech, redness of eyes, or as to any of the other classical indicia of intoxication. Although he relies on accident reports and conversation with the other investigating officers none of that is related in the record and cannot, of course, constitute a reviewable foundation of reasonableness to his belief that the defendant was intoxicated.

Accordingly, it is apparent that there is insufficient evidence in the record to support the requirement of R. C. 4511.191 that the officer have "reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways in this state while under the influence of alcohol." That test not being met the arrest was illegal, no implied consent to the blood test resulted, the result thereof could not raise the presumption that the defendant was under the influence of alcohol while operating a motor vehicle, and the court committed error prejudicial to the defendant in admitting into evidence the result of the blood test. Absent the presumption arising from the adverse test result there was insufficient other evidence in the record to convict the defendant beyond a reasonable doubt of the charge of operating a motor vehicle while under the influence of alcohol and the court committed further error prejudicial to the defendant in not sustaining his motion for directed verdict (acquittal) at the close of the plaintiff's evidence.

For these prejudicial errors the judgment must be reversed and the defendant discharged.

*Judgment reversed.*

MILLER, P. J., and COLE, J., concur.